**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) Case No. 3:17cv00612 |
| Plaintiff, | ) ) JURY TRIAL DEMANDED |
| v. | ) ) CLASS ACTION |
| XENITH BANKSHARES INC., PATRICK E. CORBIN, T. GAYLON LAYFIELD III, THOMAS G. SNEAD JR., PALMER P. GARSON, ROBERT J. MERRICK, SCOTT A. REED, W. LEWIS WITT, WILLIAM A. PAULETTE, HENRY P. CUSTIS JR., JAMES F. BURR, EDWARD GREBOW, ROBERT B. GOLDSTEIN, and UNION BANKSHARES CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on May 22, 2017 (the "Proposed Transaction"), pursuant to which Xenith Bankshares, Inc. ("Xenith" or the "Company") will be acquired by Union Bankshares Corporation ("Union").

2. On May 19, 2017, Xenith's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Union. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Xenith's and Union's stockholders, stockholders of Xenith will receive

0.9354 shares of Union common stock for each share of Xenith common stock they own.  Based on the closing sale price of Union common stock on May 19, 2017, the last trading day before public announcement of the Proposed Transaction, the 0.9354 exchange ratio represented approximately $29.67 in value for each share of Xenith common stock, or $687.2 million on an aggregate basis.

3. On August 16, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Xenith common stock.

9. Defendant Xenith is a Virginia corporation and maintains its principal executive offices at 901 E. Cary Street, Suite 1700, Richmond, Virginia 23219. The Company is the bank holding company for Xenith Bank. Xenith's common stock is traded on the NasdaqGS under the ticker symbol "XBXS."

10. Defendant Patrick E. Corbin ("Corbin") has served as director of Xenith since 2009 and is Chairman of the Board.

11. Defendant T. Gaylon Layfield, III ("Layfield") has served as director of Xenith since July 2016 and is the Company's Chief Executive Officer ("CEO").

12. Defendant Thomas G. Snead ("Snead") has served as director of Xenith since July 2016.

13. Defendant Palmer P. Garson ("Garson") has served as a director of Xenith since July 2016.

14. Defendant Robert J. Merrick ("Merrick") has served as a director of Xenith since July 2016.

15. Defendant Scott A. Reed ("Reed") has served as a director of Xenith since July 2016.

16. Defendant W. Lewis Witt ("Witt") has served as a director of Xenith since 2001.

17. Defendant William A. Paulette ("Paulette") has served as a director of Xenith since 2009.

18. Defendant Henry P. Custis, Jr. ("Custis") has served as a director of Xenith since

3

2008.

19. Defendant James Burr ("Burr") has served as a director of Xenith since 2013.

20. Defendant Edward Grebow ("Grebow") has served as a director of Xenith since September 2016.

21. Defendant Robert B. Goldstein ("Goldstein") has served as a director of Xenith since 2010.

22. The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants."

23. Defendant Union is named herein as a necessary party. Union is a Virginia corporation with its principal executive offices located at 1051 East Cary Street, Suite 1200, Richmond, VA 23219. Union is the bank holding company for Union Bank & Trust.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Xenith (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25. This action is properly maintainable as a class action.

26. The Class is so numerous that joinder of all members is impracticable. As of March 2, 2017, there were approximately 23,136,374 shares of Xenith common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel

experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

31. On July 29, 2016, the Company, which was formerly known as "Hampton Roads Bankshares, Inc.," completed a merger with legacy Xenith Bankshares, Inc. Following the merger, the Company changed its name to "Xenith Bankshares, Inc." Xenith is a bank holding company for Xenith Bank, a Virginia banking corporation and a member of the Board of Governors of the Federal Reserve System.

32. Xenith Bank is a commercial bank specifically targeting the banking needs of middle market and small businesses, local real estate developers and investors, and retail banking clients. Xenith Bank's regional area of operations spans from Baltimore, Maryland, to Raleigh and eastern North Carolina, complementing its significant presence in greater Washington, D.C., greater Richmond, Virginia, and greater Hampton Roads, Virginia. Xenith Bank conducts its

principal banking activities through 40 full-service branches and two loan production offices across these areas.

33. The Company's services and products consist primarily of taking deposits from, and making loans to, Xenith's target customers within its target markets. Xenith provides a broad selection of commercial and retail banking products, including commercial and industrial, commercial and residential real estate and consumer loans, including marine finance floorplan and end-user products through Shore Premier Finance. The Company offers a wide range of checking, savings and treasury products, including remote deposit capture, automated clearing house transactions, debit cards, 24-hour ATM access, Internet and mobile banking, and bill pay service.

34. As of June 30, 2017, Xenith had total assets of $3.2 billion, loans, net of allowance for loan losses, of $2.4 billion, total deposits through Xenith Bank of $2.6 billion, and shareholders' equity of $478.8 million.

35. On May 19, 2017, the Board caused Xenith to enter into the Merger Agreement, pursuant to which the Company will be acquired by Union.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

36. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

37. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

38. *First*, the Registration Statement omits material information regarding Xenith's financial projections, Union's financial projections, and the financial analyses performed by the Company's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), and Union's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"). The disclosure of projected financial

information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39. The Registration Statement currently only provides stockholders with the financial projections of Xenith and Union of earning per share ("EPS") and tangible book value ("TBV") per share for years 2017 through 2021.  However, in calculating the terminal values of Xenith and Union in its Discounted Cash Flow Analyses, KBW applied certain multiples to Xenith's 2023 projected earnings and Union's 2022 projected earnings.  The Registration Statement, however, fails to disclose these critical terminal year projections of the Company's and Union's earnings, as used by KBW in its analyses.

40. Relatedly, although the Registration Statement discloses certain transaction-related assumptions and adjustments that Union management made to the projections, the Registration Statement fails to disclose Xenith's projected net operating losses through year 2022.  Notably, KBW included in its Discounted Cash Flow Analysis of Xenith the present value of future remaining deferred tax assets of Xenith relating to net operating loss carryforwards utilized after 2022.  The Registration Statement must provide stockholders with Xenith's projected net operating losses through year 2022.

41. In addition to the foregoing undisclosed projections, the Registration Statement fails to disclose any other projection line items for the Company and Union, including, but not limited to: total assets; loans; total deposits; total equity; return on average assets; return on average

equity; and cash flow and its constituent line items.

42. With respect to Sandler O'Neill's Net Present Value Analysis of Xenith, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 9.5% to 12.5%; (ii) Sandler O'Neill's basis for applying a range of earnings multiples of 13.0x to 23.0x and a range of TBV multiples of 120% to 170% to calculate Xenith's terminal value; (iii) the perpetuity growth rates that are implied by Sandler O'Neill's analyses; and (iv) whether Sandler O'Neill accounted for any cost or tax savings, including the utilization of Xenith's net operating loss carryforwards, as a result of the Proposed Transaction in its analyses, and if not, the reason for not doing so.

43. With respect to Sandler O'Neill's Net Present Value Analysis of Union, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 7.5% to 10.5%; (ii) Sandler O'Neill's basis for applying a range of earnings multiples of 17.0x to 22.0x and a range of TBV multiples of 185% to 260% to calculate Union's terminal value; and (iii) the perpetuity growth rates that are implied by Sandler O'Neill's analyses.

44. With respect to Sandler O'Neill's Comparable Company Analyses of Xenith and Union, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the companies observed by Sandler O'Neill in its analyses.

45. With respect to Sandler O'Neill's Selected Transactions Analysis, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by Sandler O'Neill in its analysis.

46. With respect to KBW's Xenith Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) Xenith's projected 2022 and 2023 earnings; (ii) the Company's projected net operating loss carryforwards for years 2017 through 2022; (iii) the inputs and

assumptions underlying the discount rate range of 10% to 14%; (ii) KBW's basis for applying a range of earnings multiples of 13.5x to 17.5x to calculate Xenith's terminal value; and (iii) the perpetuity growth rates that are implied by KBW's analysis.

47. With respect to KBW's Union Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) Union's projected 2022 earnings; (ii) the inputs and assumptions underlying the discount rate range of 10% to 14%; (ii) KBW's basis for applying a range of earnings multiples of 13.5x to 17.5x to calculate Union's terminal value; and (iii) the perpetuity growth rates that are implied by KBW's analysis.

48. With respect to KBW's Selected Companies Analyses of Xenith and Union, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the companies observed by KBW in its analyses.

49. With respect to KBW's Select Transactions Analysis, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by KBW in its analysis.

50. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following section of the Registration Statement: (i) "Opinion of Union's Financial Advisor;" (ii) "Opinion of Xenith's Financial Advisor;" and (iii) "Certain Unaudited Prospective Financial Information."

51. *Second*, the Registration Statement fails to disclose material information relating to potential conflicts of interest of KBW and Sandler O'Neill. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

52. The Registration Statement indicates that, in September 2016, the Union board of

9

directors met with representatives of KBW to discuss the current banking environment, recent transactions in the banking and financial services industry, and the impact of crossing the $10 billion asset regulatory threshold. However, beginning in January 2017 through March 2017, the Xenith Board also met with representatives of KBW to discuss, among other things, strategic alternatives for the Company, including a potential sale of the Company. Although the Board met with KBW on several occasions in early 2017, the Board determined to engage Sandler O'Neill as its financial advisor for reasons undisclosed in the Registration Statement. The Registration must fully disclose the circumstances surrounding the Board's engagement of Sandler O'Neill, including whether it was due to a perceived conflict of interest of KBW, and whether KBW informed the Board or Company management that it had also met with and advised the Union board of directors.

53. Additionally, the Registration Statement states that Sandler O'Neill has provided investment banking services to, and received fees from, Union in the two years preceding the date of its opinion. Specifically, the Registration Statement states that, "[m]ost recently, Sandler O'Neill acted as underwriter in connection with Union's offer and sale of subordinated debt in 2016 for a fee of approximately $1.45 million." To the extent Sandler O'Neill has provided any additional services to Union in the past two years, the Registration Statement must disclose the nature and timing of the services, as well as the compensation earned by Sandler O'Neill.

54. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following section of the Registration Statement: (i) "Opinion of Union's Financial Advisor;" (ii) "Opinion of Xenith's Financial Advisor;" and (iii) "Background of the Merger."

55. *Third*, the Registration Statement fails to disclose material information relating to

10

potential conflicts of interest of the Company's executive officers.

56. The Registration Statement indicates that, on May 19 2017, the Board approved the payment of transaction bonuses in the aggregate amount of $7 million to the Company's executive officers. Further, the joint press release announcing the Proposed Transaction states that "Layfield will serve for a transitional period as Executive Vice Chairman of Union Bank & Trust working to ensure a successful integration and enhancing the commercial banking strategy."

57. The Registration Statement, however, fails to disclose any information relating to the timing and content of the discussions surrounding the payment of these substantial transaction bonuses and the retention of any Company management, including who participated in them. Communications regarding bonuses and post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

58. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following section of the Registration Statement: (i) "Background of the Merger;" and (ii) "Interests of Certain Xenith Directors and Executive Officers in the Merger."

59. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Xenith's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Xenith**

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Xenith is liable as the issuer of these statements.

62. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

63. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

64. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

65. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

66. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

67. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## **COUNT II**

### **Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants**

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Xenith within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Xenith and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

70. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

72. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

73. As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 7, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
T: (302) 295-5310
F: (302) 654-7530
Email: bdl@rl-legal.com
    gms@rl-legal.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
T: (484) 324-6800
F: (484) 631-1305
Email: rmaniskas@rmclasslaw.com

**LEVI & KORSINSKY LLP**

*/s/ Elizabeth K. Tripodi*
Elizabeth K. Tripodi (VA Bar No. 73483)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: etripodi@zlk.com

*Attorneys for Plaintiff*